IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| ROBERT E.S.,<br>     Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>     Defendant. | Case No. 4:20-cv-04131-JEH |

**Order**

Now before the Court is the Plaintiff Robert E.S.'s Motion for Summary Judgment (Doc. 16), the Commissioner's Motion for Summary Affirmance (Doc. 20), and the Plaintiff's Reply (Doc. 23).[1] For the reasons stated herein, the Court GRANTS the Plaintiff's Motion for Summary Judgment, DENIES the Defendant's Motion for Summary Affirmance, and REMANDS this matter for proceedings consistent with this opinion.[2]

**I**

Robert E.S. filed an application for disability insurance benefits (DIB) on January 8, 2017, alleging disability beginning on September 23, 2016. His DIB application was denied initially on May 19, 2017 and upon reconsideration on July 13, 2017. Robert filed a request for hearing concerning his DIB application which was held on November 15, 2018 before the Honorable John P. Mills, III (ALJ). At the hearing, Robert was represented by an attorney, and Robert and a vocational

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 14, 15).
[2] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Docs. 9, 11, 12) on the docket.

1

expert (VE) testified. Following the hearing, Robert's claim was denied on March 13, 2019. His request for review by the Appeals Council was denied on April 22, 2020, making the ALJ's Decision the final decision of the Commissioner. Robert timely filed the instant civil action seeking review of the ALJ's Decision on June 10, 2020.

## II

On his Disability Report – Adult – Form SSA-3368, Robert claimed the following conditions limited his ability to work: back injury; arthritis; depression; major pain; problems walking; problems standing; problems sleeping; and problems sitting. AR 166. At the hearing, Robert testified that his ability to work was limited by "lower-back pain that'll go clear down into my legs and feet. It will get bad enough to where it comes clear up into my shoulder blades[.]" AR 45.

Robert testified that he was heavier than his normal weight, up 31 to 41 pounds, due to inactivity. He had spinal fusion surgery in December 2017. Since that time, he still had pain, but he gained back feeling in his legs. He still had issues with numbness, off and on, in his legs and feet. He had a spinal cord stimulator implanted in August 2018 which he said "does help." AR 55. Specifically, the stimulator caused him to cut down his pain medication, though he still had pain. He thought he could sit for between 10 and 20 minutes before he would need to stand up, stand for about five or 10 minutes before he would need to sit back down, and walk for "maybe" 30-40 feet at one time. AR 58. He thought he could "maybe" lift 10 pounds without exacerbating his pain. AR 59. Though Robert's past work did not include sit-down work, he did not think he could do a sit-down job five days a week, eight hours a day; he testified, "I just get in so much pain, I – all I want to do is lay down." AR 60.

The VE was then questioned. The ALJ asked the VE to assume:

> a hypothetical individual with the same age and education as the claimant with the residual functional capacity to perform light work as is defined, however, this individual could only occasionally climb ramps and stairs, but should never climb ladders, ropes, or scaffolds; this individual could only occasionally balance, stoop, kneel, crouch, and/or crawl; this individual could only occasionally work at unprotected heights; around moving mechanical parts; they could only occasionally work in environments with extreme cold and with vibrations; in addition, this individual is limited to the performance of simple and routine tasks and limited to simple work-related decisions.

AR 64. The VE answered that the hypothetical was consistent with only one of Robert's past jobs. The ALJ next asked the VE to change the foregoing hypothetical from light to sedentary work. The VE answered that none of Robert's past work could be performed by such an individual. The ALJ asked:

> Q. In your opinion, could such an individual perform other unskilled work that exists in significant number [sic] in the national economy?
> A. Yes, based on the simple, routine tasks, we're looking at manufacturing . . . .

*Id*. If the hypothetical individual were off task for 25% of the time in an eight-hour workday in addition to normal breaks, the VE explained the individual would not be able to perform any competitive employment as such off-task time "would generally be considered inadequate productivity." AR 66.

Robert's attorney then asked the VE to add to the sedentary hypothetical the person's need to be able to alternate from a sitting position to a standing position at will. The VE testified that it would reduce the numbers of jobs the VE discussed. If the individual also needed to stretch and walk for a minute when alternating positions between sitting and standing, that would rule out employment if that were required on a fairly regular basis as "it would logically reduce productivity to below acceptable levels." AR 69. The ALJ then asked, "[I]f the person remains

on task at the workstation, they're okay. If they're walking away, that would take them off task?" *Id*. The VE answered, "Exactly." *Id*.

## III

In his Decision, the ALJ determined at Step Two of the five-step disability analysis that Robert had the following severe impairments: degenerative disc disease status-post surgery; arthritis; obesity; and unspecified depressive disorder. AR 18. At Step Three, the ALJ explained that while there was no listing for obesity, "in accordance with the guidance contained in SSR 02-1p, the effect of the claimant's obesity has been fully considered in determining that the claimant's overall condition does not meet the requirements or equal the level of severity contemplated for any listing in Appendix 1." AR 18. With regard to Robert's mental impairment, the ALJ determined he had moderate limitations in the ability to concentrate, persist, or maintain pace. In support of that finding, the ALJ pointed to Robert's contention that he had limitations in completing tasks, but also Robert's stated ability to drive and manage funds.

At Step Four, the ALJ made the following residual functional capacity (RFC) finding:

> [T]he claimant has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant must be allowed to alternate sitting and standing, at will, but while remaining on task. He can never climb ladders, ropes, or scaffolds. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and/or crawl. He can occasionally work around unprotected heights, around moving mechanical parts, in environments of extreme cold, and with vibrations. He is limited to the performance of simple and routine tasks and to simple work-related decisions.

AR 20. The ALJ considered Robert's allegations of limitations due to a combination of physical and mental impairments. Among other hearing testimony the ALJ summarized, he highlighted Robert's testimony that Robert had gained weight

which Robert attributed to a decrease in activity level. The ALJ discussed the medical evidence pertaining to Robert's back impairments including: the fact of his lumbar spine surgery in 1998; treatment with lumbar epidural steroid injections, referral to a pain clinic, and placement on a prescription regimen; referral to an orthopedist; referral to physical therapy and completion of several sessions of it; and an anterior lumbar interbody fusion in December 2017. In February 2017, Robert ambulated with a non-antalgic gait, though he seemed uncomfortable when changing positions, he had normal range of motion, he had a mild change in sensation in his lower left leg, he had 5/5 strength in his lower extremities, and his straight leg raise was negative. In April 2017, Robert was observed to walk slowly with a limp. In May 2017, Robert had 5/5 strength in his upper and lower extremities, had normal muscle tone, had a stable gait, and his sensation was intact. At a pre-operative examination in November 2017, Robert denied depression, weakness, numbness, tingling, or loss of balance or falls, and he ambulated normally with grossly normal sensation, intact coordination, and normal motor strength. Following surgery, Robert sought treatment in the emergency department for his back pain that radiated into his lower extremities in January 2018 and again for back pain in May 2018.

The ALJ also detailed Robert's trial with a dorsal column stimulator (DCS) in July 2018 following continued complaints of low back pain and the implantation of a DCS in August 2018 after the successful trial. The last medical record the ALJ explicitly discussed was dated November 15, 2018 which provided Robert was started on a new medication as an earlier-prescribed one had not worked to relieve his pain, and his doctor noted his willingness to consider removing the DCS if the new medication was unsuccessful.

With regard to Robert's mental impairment, the ALJ discussed Robert's April 2017 psychological consultative examination. At the examination, Robert's

memory was intact but he performed below average on attention and concentration. His performance was average in other areas. The examining doctor diagnosed Robert with an unspecified depressive disorder exacerbated by uncontrolled pain. At a psychological pain evaluation in May 2018, Robert had no unusual behavior, and he was fully oriented. The examining doctor concluded Robert was moody and had unpredictable responses to frustration, was preoccupied with his symptoms, and had little sustaining power though he was initially cooperative.

As for the opinions of record, the ALJ gave "limited weight" to Robert's primary care physician's August 2017 opinion that Robert had difficulty with lifting, walking, and using the restroom. The ALJ gave the opinion such weight because it did not specify how Robert was limited in his abilities, was not fully supported by the record, and appeared alongside other opinions that were more consistent with the overall record. The ALJ gave "some weight" to that doctor's January 2018 observation that Robert would probably need to find new employment given the nature of heavy lifting in his previous job. The ALJ found the observation consistent with imaging studies and Robert's treatment history. The ALJ gave "limited weight" to Robert's neurosurgeon's November 2018 medical source statement as it was from a treating source who performed Robert's fusion surgery and who implanted Robert's DCS, but the opinion was vague regarding Robert's need to take unscheduled breaks and the doctor confirmed he could not answer most questions accurately. The ALJ gave the State Agency medical consultants' opinions that Robert could perform light exertional work "significant weight" as they were familiar with the disability program and carefully evaluated the record and cited specific evidence in support of their conclusions. The ALJ observed, however, that they did not have the opportunity

to personally examine Robert nor did they review evidence received at the hearing level.

## IV

Robert argues: 1) the ALJ's physical RFC assessment failed to comport with SSR 96-8p's "narrative discussion" mandate; 2) the ALJ's mental RFC assessment is not supported by substantial evidence; 3) the ALJ failed to adequately assess opinion evidence; and 4) the ALJ's symptom evaluation is not supported by substantial evidence.

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id*. An affirmative answer at steps 3 or 5 leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. *Id*. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Robert claims error on the ALJ's part at Step Four.

**A**

The first of Robert's many arguments is that that ALJ failed to identify the evidentiary basis for the RFC assessment, citing specific medical facts and non-medical evidence in a "narrative discussion" format as required by SSR 96-8p. Robert points to evidence he says supports allegations of significant problems with sitting for more than brief periods and argues the ALJ failed to articulate how that evidence supported that he could perform full-time sedentary work, argues the ALJ did not explain how he determined Robert would not be off-task when alternating between sitting and standing, argues the ALJ failed to explain why the evidence supported a finding that Robert had greater standing and walking limitations than those opined to by the State Agency doctors but was not also more greatly limited in sitting, and argues the ALJ did not explain how he evaluated the combined effect of Robert's impairments, including obesity. The Commissioner counters that Robert is mistaken in suggesting throughout his brief that the lack of an opinion that matched the ALJ's Decision would be an error, and the ALJ provided a detailed explanation that traced the path of his reasoning regarding the impact of Robert's impairments on his functional capacity.

Try as it might, the Court cannot find where in the ALJ's Decision he fell so far short in so many ways as to the physical RFC alone as argued by Robert. SSR 96-8p provides in relevant part, "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p at *7. In his summary discussion of the medical evidence, the ALJ cited some of the same evidence Robert cites in his brief pertaining to the period after Robert's spinal fusion surgery: Robert sought treatment for his back pain that radiated into his lower extremities in January 2018

and he was noted upon examination at that time for tenderness and pain in his lower back; Robert's February 2018 MRI showed he had mild foraminal narrowing at the L4-L5 and L5-S1 levels; Robert was noted for a decreased range of motion, tenderness, and pain in his lumbar spine and had some swelling in his right lower leg upon examination in May 2018 when he complained of back pain worsening over the last three months; Robert underwent implantation of a DCS in August 2018 after he continued to have low back pain. The ALJ also discussed Robert's reports to his primary care physician in October 2018 that he felt he had more numbness and tingling in his feet due to the DCS and Robert's trial use of Prednisone to reduce his pain as late as October 24, 2018. However, the ALJ explained that the evidence was not so one-sided in terms of positive back findings. He noted Robert retained a normal, independent gait, had full strength in his lower extremities, his sensation was generally noted to be intact and his reflexes symmetrical, and the trajectory of his treatment for back pain went from surgery and implantation of a DCS to primarily over-the-counter medications. At that point, the ALJ articulated, "The claimant's signs and treatment history are consistent with the reduced range of sedentary [RFC]." AR 24. The ALJ's finding of consistency must be considered in tandem with his favorable consideration of Robert's neurosurgeon's conclusion that Robert would benefit from the opportunity to change positions from sitting to standing to relieve back pain. It must also be considered together with the ALJ's finding that it was reasonable to limit Robert beyond the State Agency medical consultants' opinions by including slightly more restrictive postural activities. Of note is the fact that the ALJ explained what added to and what detracted from each of the opinions of record. All of the foregoing amounts to the ALJ's description of how the evidence supported his conclusion that Robert remained capable of performing the prolonged sitting required by sedentary work so long as he had a sit/stand option.

To the extent Robert argues the ALJ played doctor in formulating the physical RFC, the Court does not see where the ALJ did so. It was the ALJ who had the "final responsibility" for determining Robert's RFC, 20 C.F.R. § 404.1527(d), and the ALJ did not need to adopt any one doctor's opinion. *See Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) ("the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions any of the claimant's physicians"). In light of Robert's physical RFC arguments, it bears mentioning that an ALJ is not required to address in writing every piece of evidence or testimony presented. *Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013). It is therefore not fatal that the ALJ did not explicitly discuss, with regard to Robert's ability to stay on task while shifting between sitting and standing, Robert's statements that he had to be careful when getting off a chair or sofa and it took him time to get out of a car. Also, Robert's argument in this regard presupposes his subjective statements were to be fully credited by the ALJ. Ideally, the ALJ would have explained the evidence he relied upon to support his assessment that Robert could alternate sitting and standing while remaining on task. But the error is harmless given that no one who opined (and upon which the ALJ partially relied) as to a sit/stand option mentioned that Robert's doing so would come with further conditions (i.e. time to slowly adjust).

As for the ALJ's consideration of Robert's obesity, assuming *arguendo* that an error was made here, error in this regard is similarly harmless. The ALJ acknowledged that Robert's body mass index placed him in the "Level I obesity" category and as required under SSR 02-1p, "the cumulative effects of the claimant's obesity have been fully considered in the same manner as all other medically determinable impairments in arriving at the [RFC] limitations in [the] Decision." AR 21. He then acknowledged Robert's history of a combination of back pain, arthritis, and obesity. The ALJ stated as a basis for his departure from full

acceptance of the State Agency medical consultants' opinions his consideration of "all of the claimant's impairments, including his obesity[.]" AR 25. Obviously, the ALJ explicitly considered Robert's obesity. Even though the Seventh Circuit has explained a failure to explicitly consider the effects of obesity may be harmless, *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006), Robert insists that the ALJ did not explain why obesity did not aggravate his back pain, impact his ability to sit for extended periods, or further limit his ability to perform postural activities. A single statement in the Decision reveals the ALJ *did find* that Robert's obesity aggravated his back, impacted his ability to sit for extended periods of time, further limited his ability to perform postural activities, and did so in the aggregate with his other impairments. Departing from the State Agency medical consultants' opinions that Robert could perform light work, the ALJ stated: "In consideration of *all of the claimant's impairments, including his obesity*, the undersigned finds it is reasonable to limit the claimant to sedentary work with a sit/stand option and slightly more restrictive postural activities." AR 25 (emphasis added). Beyond the fact that the ALJ *did* explicitly consider Robert's obesity is the fact that he points to no *record* evidence that identified his obesity as significantly aggravating his other impairments or further contributing to his physical limitations beyond that found by the ALJ. *See Prochaska*, 454 F.3d at 737 (finding any error the ALJ committed in failing to consider claimant's obesity harmless where the claimant failed to specify how her obesity further impaired her ability to work and where the ALJ implicitly considered the claimant's obesity through his review and discussion of her doctor's reports which did discuss her weight).

## B

Next, Robert argues that the ALJ did not apprise the VE of Robert's specific concentration limitations, but instead conveyed the precise kinds of

12

accommodations that the Seventh Circuit has held do not account for such limits. The Commissioner counters that while Robert suggests his concentration problems may have exceeded the simple work limits found by the ALJ, he cites no objective support from a treating, examining, or reviewing psychologist or psychiatrist that would support he had such additional limits.

On the one hand, the Seventh Circuit has stated that "[a]s a matter of substance . . . the ALJ must ensure that the VE is apprised fully of the claimant's limitations so that the VE can exclude those jobs that the claimant would be unable to perform." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). The Seventh Circuit has also stated that "An ALJ need not use specific terminology" when conveying a claimant's limitations. *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019). On the other hand, the Seventh Circuit has stated that "[W]e have repeatedly rejected the notion that a hypothetical . . . confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018) (quoting *Yurt v. Colvin*, 758 F.3d 850, 858-89 (7th Cir. 2014)).

In reiterating what evidence the ALJ considered and what conclusions the ALJ drew from the evidence insofar as the finding of a moderate limitation in concentration, persistence, or pace was concerned, the Commissioner does not address the crux of Robert's argument: that the ALJ did not actually *convey* that limitation in the RFC finding nor, accordingly, in the hypothetical questions posed to the VE. As Robert highlights, "[t]he ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010). Yet, here,

13

the ALJ merely limited Robert to work of lesser complexity – unskilled work[3] – and decided that accounted for his limitations in concentration, persistence, or pace. The ALJ revealed as much where he stated Robert's severe depressive disorder "reasonably affects his ability to perform more than simple and routine tasks and to make complex decisions." AR 25. At Step Three, upon finding that Robert had moderate limitations in the ability to concentrate, persist, or maintain pace, the ALJ noted Robert's contention that he had limitations in completing tasks. In essence, the ALJ conflated work complexity with limitations in concentration, persistence, or pace. The Court cannot reconcile the ALJ's mental RFC and foregoing statement with the Seventh Circuit's admonitions that limiting a claimant to unskilled, simple work fails to account for a claimant's difficulties in maintaining concentration, persistence, or pace. Because the ALJ found Robert had moderate limitations in concentration, persistence, or pace, it was incumbent upon the ALJ to include in the mental RFC and convey in the hypotheticals to the VE that limitation. *See Yurt*, 758 F.3d at 857 ("As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record"). A particular question and answer between the ALJ and the VE at the hearing only further suggest that the ALJ did not actually convey the found moderate limitations Robert had in concentration, persistence, or pace. *See supra* at Sect. II. The ALJ's failure to include Robert's determined moderate limitations in concentration, persistence, or pace necessitates remand. It is therefore unnecessary for the Court to address the remaining arguments, though the ALJ upon remand should ensure that he

---

[3] "The hypothetical question begins by positing a person capable of performing 'simple, routine, and repetitive tasks.' These terms refer to 'unskilled work,' which the regulations define as work that can be learned by demonstration in less than 30 days. *See* 20 C.F.R. §§ 404.1568, 404.1520." *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015).

adequately assesses the opinion evidence and supports his symptom evaluation with substantial evidence.

V

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment (Doc. 16) is GRANTED, the Defendant's Motion for Summary Affirmance (Doc. 20) is DENIED, and this matter is REMANDED pursuant to Sentence Four of 42 U.S.C. § 405(g) for the ALJ to include in his mental RFC and hypothetical questions to the VE all of Robert's limitations that are supported by the record.

The Clerk of Court is directed to enter judgment as follows: "IT IS ORDERED AND ADJUDGED that this case is remanded to the Commissioner of Social Security for further proceedings consistent with this Opinion pursuant to 42 U.S.C. § 405(g), Sentence Four."

*It is so ordered.*

Entered on March 29, 2022.

s/Jonathan E. Hawley<br>U.S. MAGISTRATE JUDGE